IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CT-3212-F

| | | |
|---|---|---|
| SAMUEL KNOWLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court following a bench trial held on November 16, 2015. Also before the court is Defendant's motion for judgment as a matter of law. The court has reviewed all of the admissible evidence (including testimony, the trial exhibits, and the stipulations) and makes the following findings of fact and conclusions of law. For the reasons discussed below, the court finds that Plaintiff has met his burden of proof. Accordingly, Defendant's motion for a judgment as a matter of law is DENIED, and judgment shall be entered in favor of Plaintiff.

## PROCEDURAL HISTORY

On October 26, 2012, Plaintiff, an inmate in the custody of the Bureau of Prisons ("BOP"), filed a *pro se* complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.[1] Mr. Dhamian A. Blue entered a notice of appearance on behalf of Plaintiff on

---

[1] The parties stipulate that Plaintiff fully exhausted his administrative remedies before filing his complaint. Joint Pretrial Order [DE-74] ¶ 34.

December 3, 2012 [DE-3].[2] On February 14, 2013, the court determined that Plaintiff's complaint survived frivolity review pursuant to 28 U.S.C. § 1915 [DE-11].

Defendant filed a motion to dismiss on April 26, 2013 [DE-18]. In its motion to dismiss, Defendant argued: 1) the court lacks subject-matter jurisdiction over Plaintiff's claims because he was injured by the act of an independent contractor; and 2) Plaintiff's claim should be dismissed because he failed to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. Def. Mem. [DE-19], pp. 9-23. On March 20, 2014, Defendant's motion to dismiss was denied without prejudice [DE-32]. Specifically, the court noted that Plaintiff had plausibly alleged the alleged negligence of BOP employees, not an independent contractor.[3] March 20, 2014 Order [DE-32], p. 3. Likewise, the court found that Rule 9(j)[4] was not applicable to Plaintiff's claim, which sounds in ordinary negligence rather than medical malpractice. Id. at p. 6.

Mr. Blue amended Plaintiff's original *pro se* complaint on April 21, 2014 [DE-33]. In his amended complaint, Plaintiff contends that the BOP failed to transport him to his ophthalmologist's clinic for a surgical procedure that had been scheduled for him, and that the 15-month delay in treatment which resulted was a proximate cause of the complete loss of vision in his right eye. Defendant answered the amended complaint on June 19, 2014 [DE-38]. On July

---

[2] Mr. Blue subsequently withdrew his representation of Plaintiff on February 14, 2013 [DE-11]. However, he entered a renewed notice of appearance on behalf of Plaintiff on May 30, 2013 [DE-23] and has represented Plaintiff in this matter since that time.

[3] Specifically, Plaintiff does not allege that he was injured by the acts of an independent contractor. Rather, Plaintiff contends that BOP employees negligently failed to transport him to a surgery scheduled by a independent contractor physician. March 20, 2014 Order [DE-32], p. 3.

[4] Rule 9(j) requires a plaintiff in a medical malpractice action to have his claim reviewed by a medical expert who is willing to testify that the medical care did not comply with the applicable standard of care. N. C. R. Civ. P. 9(j).

2

2, 2015, Defendant filed an unopposed motion for a settlement conference [DE-44]. This request was allowed, and a settlement conference was held before Magistrate Judge Robert B. Jones, Jr. on September 17, 2015 [DE-55]. The parties were unable to reach a settlement agreement, and a bench trial was held on November 16, 2015 [DE-80].

## FINDINGS OF FACT

Plaintiff is a 55 year old man, currently serving a 420-month sentence for drug trafficking. Joint Pretrial Order [DE-74] ¶¶ 17-18. Specifically, on May 30, 2008, in the United States District Court for the Southern District of Florida, Plaintiff was sentenced to a 420 month term of imprisonment for convictions of conspiracy to import, distribute, and possession with intent to distribute, five kilograms or more of cocaine. His projected release date is April 19, 2032. Id. ¶ 17.

On or about May 8, 2009, while at the Federal Detention Center in Miami, Florida, Plaintiff was treated for proliferative diabetic retinopathy, which is damage to the retina in each of his eyes, caused by complications of diabetes. Id. ¶ 19. Plaintiff underwent a vitrectomy[5], membrane peeling, lensectomy, and silicone oil injection in the right eye for treatment of a retinal detachment. Id. At that time, Plaintiff's uncorrected vision in his right eye was 20/200.[6] Id. In a written Consultation Report dated May 19, 2009, Plaintiff's treating physician stated that

---

[5] A vitrectomy is the removal of vitreous fluid, which is a jelly-like fluid that fills the posterior segment of the eyeball. Pl. Mem. [DE-85], p. 4. n. 1.

[6] Dr. Pushp Claudius was a physician employed by the BOP and was Plaintiff's primary care physician at Butner during the time relevant to Plaintiff's complaint. Tr. at pp. 14-15. He testified that a person with 20/200 is legally blind. Id. at p. 79. However, a person with 20/200 vision is not completely blind and still has some vision. Id. For example, a person with 20/200 vision can still perceive light and may be able to read. Id. Plaintiff testified that he was still able to see out of his right eye in July, 2010. Id. at p. 51.

3

Plaintiff "will need silicone oil removal and secondary intraocular lens in November 2009. Please assume his care." Id. ¶ 20.

Plaintiff was transferred to Federal Correctional Institution II Butner ("Butner") on June 9, 2009. Id. ¶ 21. Upon his arrival, it was noted that Plaintiff had blurred vision. Id. On November 20, 2009, Plaintiff was examined by Dr. Vinod K. Jindal.[7] Id. ¶ 22. Dr. Jindal's examination demonstrated that Plaintiff "had a vitrectomy and silicone oil implant for proliferative diabetic retinopathy with retinal detachment in the right eye." Def. Mem. [DE-85], p. 5. Moreover, Dr. Jindal specifically noted that Plaintiff would later require the removal of the silicone oil that had previously been injected into his right eye. Id.

Plaintiff was examined again by Dr. Jindal on April 7, 2010 and May 24, 2010. Joint Pretrial Order [DE-74] ¶ 23. During these examinations, Plaintiff's uncorrected vision in his right eye remained 20/200. Id. Following a July 23, 2010 examination of Plaintiff, Dr. Jindal scheduled a follow-up surgery within two months in his clinic for the removal of the silicone oil that had been injected into Plaintiff's right eye. Id. ¶ 26.

Despite the scheduling of this appointment, Plaintiff was not returned by the BOP to Dr. Jindal until October 18, 2011. Id. ¶ 28. Ultimately, Plaintiff lost all vision in his right eye. Moreover, Dr. Jindal testified during a deposition that, if the silicone oil had been removed from Plaintiff's right eye in a timely fashion, continued medical intervention could have saved some of Plaintiff's vision. Id. ¶ 31; Def. Mem. [DE-85], pp. 6-7.

## CONCLUSIONS OF LAW

---

[7] Dr. Jindal is a board certified ophthalmologist licensed in the State of North Carolina. He is an independent contractor and not an employee of the BOP. Joint Pretrial Order [DE-74] ¶ 1.

4

## I. Jurisdiction and Venue

Pursuant to 28 U.S.C. § 1331, district courts have subject matter jurisdiction of all civil actions "arising under the Constitution, laws, or treaties of the United States." Plaintiff brings this action under the FTCA to recover damages from the United States for the injuries he sustained. Therefore, the court is vested with subject matter jurisdiction inasmuch as Plaintiff seeks to recover damages for an alleged tort of the employees of a federal agency. See 28 U.S.C. § 1346(b)(1). Venue of this matter is proper pursuant to 28 U.S.C. § 1402(b).

## II. FTCA

Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); see Millbrook v. United States, __ U.S. __, 133 S. Ct. 1441, 1443 (2013); Levin v. United States, __ U.S. __, 133 S. Ct. 1224, 1228 (2013); Anderson v. United States, 669 F.3d 161, 164 (4th Cir. 2011). A prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 150 (1963) (footnote omitted); see, e.g., Millbrook, 133 S. Ct. at 1443. The waiver is limited, however, to acts of governmental employees, and does not extend to acts of independent contractors. See Logue v. United States, 412 U.S. 521, 526–30 (1973); Williams v. United States, 50 F.3d 299, 305–06 (4th Cir. 1995); Wood v. Standard Prods. Co., 671 F.2d 825, 829 (4th Cir. 1982).

The substantive law of the place where the act or omission occurred is to be applied in a FTCA action, which in this case is North Carolina. Cibula v. United States, 551 F.3d 316, 319

5

(4th Cir. 2009) (citing 28 U.S.C. § 1346(b)(1)). Although this action involves Plaintiff's medical treatment, ultimately, this case sounds in ordinary negligence, not medical malpractice. Simply put, Plaintiff's claim is not that BOP physicians failed to provide adequate medical treatment. Rather, Plaintiff contends that BOP employees failed to transport him to Dr. Jindal's clinic for a surgical procedure that had been scheduled for him. See Daniel v. United States, No. 5:11-CT-3067-BO, 2013 WL 393337, at *2 (E.D.N.C. Jan. 31, 2013) (Holding that claim sounded in ordinary negligence where "Plaintiff never complained of the treatment he received from the medical specialist . . . [but rather] concerned the fact that the administration failed to follow the medical decisions concerning the need for treatment to prevent further and present damage to his eyes."); Baker, 2013 WL 211254, at *4 (E.D.N.C. Jan. 18, 2013) (noting that the Fourth Circuit has not expressly addressed whether the independent contractor doctrine bars "mixed" cases, in which some of the plaintiff's allegations concern alleged negligent actions of government employees and that other courts have permitted mixed actions to proceed based on the alleged negligent acts of government employees). Moreover, North Carolina recognizes claims of ordinary negligence which bear some connection to medical treatment. See Allen v. Cnty. of Granville, 203 N.C. App. 365, 367, 691 S.E.2d 124, 126–27 (2010); Estate of Waters v. Jarman, 144 N.C. App. 98, 102, 547 S.E.2d 142, 145 (2001); cf. Littlepaige v. United States, No. 12-1367, 2013 WL 2501744, at *3–4 (4th Cir. June 12, 2013) (per curiam) (unpublished).

Thus, this claim should be analyzed under ordinary negligence principles. North Carolina law requires that "in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). "Actionable negligence is

6

the failure to exercise the degree of care which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a duty to use reasonable care." Hart v. Ivey, 332 N.C. 299, 305, 420 S.E.2d 174, 177-78 (1992) (internal citations omitted). In sum, Plaintiff must establish, by a preponderance of the evidence, duty, breach of duty, proximate cause, and damages. Butler v. United States, 702 F.3d 749, 755 (4th Cir. 2012). The court shall address each of these elements in turn.

### A. Duty of Care

Defendant does not dispute that it owes Plaintiff a duty of care. Tr. at p. 6. Moreover, with respect to federal prisoners, the Supreme Court has determined that the duty of care owed by the BOP is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule.[8] Muniz, 374 U.S. at 164-65. Specifically, § 4042 provides, in pertinent part, that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3). Accordingly, Plaintiff has established this element by a preponderance of the evidence.

### B. Breach of Duty

Defendant contends that it was not responsible for any breach in its duty of care to Plaintiff. Specifically, Defendant argues that, at the time relevant to Plaintiff's complaint, the BOP contracted with Medical Development International ("MDI")[9] to provide comprehensive

---

[8] "North Carolina does not have an inconsistent state rule." Tyree v. United States, No. 5:14-CT-3158-BO, 2015 WL 5093248, at *3 (E.D.N.C. Aug. 28, 2015).

[9] The BOP no longer contracts with MDI, and MDI has gone through bankruptcy proceedings. Tr. at p. 9.

7

medical care to inmates housed at Butner. Def. Mem. [DE-84], p. 3. Defendant argues that the failure to timely transport Plaintiff to his surgical appointment with Dr. Jindal was the result of MDI's negligence, not the BOP's.

Specifically, the BOP contracted with MDI to provide speciality care for inmates, and the scheduling of appointments with outside community medical providers was handled by MDI. Bunts Aff. [DE-21-1] ¶ 12; Tr. at p. 16. For example, Dr. Jindal was contracted through MDI to perform services at Butner. Tr. at p. 16. Medical providers employed by the BOP made referrals for inmates to be seen in the speciality clinics operated by MDI physicians. Bunts Aff. [DE-21-1] ¶ 11. Pursuant to this contract, inmates would first be treated at an on-site clinic. Tr. at p. 16. When additional care from a specialist was required, a BOP medical provider would electronically submit a consultation request to a scheduling secretary employed by MDI. Id. at pp. 16-17. The consultation request would then be reviewed by the BOP's Utilization Review Committee ("URC"). Id. at p. 17. The URC consists of the clinical director and several other physicians. Id. at 17-18. All members of the URC, including the clinical director, are BOP employees. Id. at pp. 18-19. After the URC approved a consultation request, MDI's scheduling secretary would make an appointment for the inmate to see the off-site specialist. Id. at 17. These appointments were then processed by a town-trip coordinator employed by the BOP. Bunts Aff. [DE-21-1] ¶ 13. Specifically, the town-trip coordinator processed all paperwork associated with the outside medical trip, so that all relevant parties were aware of the inmate's scheduled off-site treatment. Id.

Despite its contract with MDI, however, primary responsibility for Plaintiff's health care remained with BOP medical staff. For example, the BOP's own consultation request forms state

8

"[f]ollow-up services and primary responsibility for inmate health care remains with Bureau of Prisons staff." Pl. Exs. 4, 7, 8, 9, 11; Tr. at pp. 5-6, 21-23, 40. Likewise, Dr. Claudius testified that Butner's clinical director was ultimately responsible to ensure that inmates were actually taken to appointments scheduled by MDI. Tr. at p. 28. Specifically, Dr. Claudius testified that "it is the responsibility of the clinical director and the Utilization Review Coordinator and the scheduler to take care of [an off-site medical] consult." Id. at p. 32. Dr. Claudius later reiterated, "it is [the clinical director's] responsibility to coordinate all [off-site] consults." Id. at p. 33. In sum, the court finds that, while the BOP did contract with MDI to provide speciality medical treatment, the responsibility to ensure that an inmate was actually transported to his scheduled appointments remained with the BOP. See 18 U.S.C. § 4042; Baker v. United States, No. 5:11-CT-3070-D, 2013 WL 211254, at *2 (E.D.N.C. Jan. 18, 2013) ("While an onsite MDI Scheduler, who is not a BOP employee, schedules all appointment[s] for specialty clinics, a BOP employee is responsible for coordinat[ing] the processing of all paperwork associated with [an] outside medical trip in order to ensure the inmate's ability to attend outside medical appointments . . . [a]dditionally, BOP custody staff must transport inmates to the Federal Medical Center for medical appointments.").

The court is aware of and has considered the independent contractor exception to the FTCA.[10] Williams, 50 F.3d at 304 (reasoning the United States had not waived its sovereign

---

[10] Another frequently applied exception to the FTCA is the discretionary function exception. See, e.g., Miller v. SFF Hazelton, No. 1:12CV98, 2015 WL 1021456, at *8 (N.D.W. Va. Mar. 9, 2015). The discretionary function exception precludes governmental liability for "[a]ny claim based upon ... the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Defendant does not argue that the discretionary function exception should apply in this action. However, because the court no longer has subject matter

9

immunity for the actions of an independent contractor and dismissing under Rule 12(b)(1)); Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996) ("Congress has not waived the sovereign immunity of the United States for injuries resulting from the actions of independent contractors performing work for the government"). Ultimately, the court finds that the independent contractor exception does not apply because Plaintiff has established by a preponderance of the evidence that BOP officials themselves were negligent, separate from any conduct by independent contractors. Specifically, the evidence indicates that, on July 23, 2010, Dr. Jindal scheduled a surgery for Plaintiff's right eye within two months. Tr. at p. 28. Plaintiff's primary care provider, Butner's clinical director, and the URC–all BOP employees–were aware of, and approved, this scheduled surgery. Id. at pp. 16-18, 28-32. Despite this knowledge and approval, Plaintiff was not transported by the BOP to this surgery in a timely manner. Joint Pretrial Order [DE-74] ¶¶ 24-31; Tr. 16-27, 74-75, After reviewing the entire record the court finds that

---

jurisdiction if the exception applies, the court has considered the issue *sua sponte*. Blanchard v. United States, No. 2:14-CV-58 BAILEY, 2015 WL 4107311, at *9 (N.D.W. Va. July 7, 2015) aff'd, No. 15-7248, 2015 WL 7352197 (4th Cir. Nov. 20, 2015). The United States Supreme Court has announced a two-step test for determining whether the discretionary function exception bars suit against the United States in a given case. First, the Court must consider the nature of the conduct and determine whether it involves "an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991). Government conduct does not involve an element of judgment or choice and is not discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." Id. (internal citations and quotations omitted). If the conduct in question involves the exercise of judgment or choice, the second step of the analysis is to determine whether that judgment is grounded in considerations of public policy. Here, the court finds that the exception does not apply. First, this conduct does involve an element of judgment or choice. See Calderon v. United States, 123 F.3d 947, 950 (7th Cir.1997)(finding that 18 U.S.C. § 4042 "sets forth no particular conduct that the BOP personnel should engage in or avoid while fulfilling their duty to . . . inmates."). However, the judgment or choice in this case–the failure to transport Plaintiff to a medical appointment that had already been approved by BOP medical staff–was not grounded in considerations of public policy.

Plaintiff has established by a preponderance of the evidence that Defendant had a duty to transport him to a surgery that it had previously approved in a timely manner, and Defendant breached this duty.

### C. Proximate Cause

Under North Carolina law, proximate cause is:

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

Adams v. Mills, 312 N.C. 181, 192-93, 322 S.E.2d 164, 172 (1984) (internal quotation marks omitted). While foreseeability is "a requisite of proximate cause," foreseeability of the "precise form" of the resulting injury is not. Hairston v. Alexander Tank & Equip. Co., 310 N.C. 227, 233-34, 311 S.E.2d 559, 565 (1984); see also Adams, 322 S.E.2d at 172. "All that a plaintiff is required to prove on the question of foreseeability, in determining proximate cause, is that in the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." Hairston, 311 S.E.2d at 565 (internal quotation marks omitted).

Here, Plaintiff was examined by Dr. Jindal on April 7, and May 24, 2010. Pl. Mem. [DE-85], p. 5. During both of these examinations, Plaintiff's uncorrected vision in his right eye was 20/200. Id. On June 23, 2010, Dr. Jindal scheduled a follow-up surgery within two months for Plaintiff to have silicone oil removed from his right eye. Id. The BOP negligently failed to transport Plaintiff to this appointment until 15 months later. Id. at p. 6. By the time the BOP transported Plaintiff to his scheduled appointment with Dr. Jindal, he no longer had any vision in

11

his right eye. Id. Dr. Jindal stated that if Plaintiff had been treated in a timely manner, continued medical intervention could have saved some of his vision. Id. Specifically, during his deposition, Dr. Jindal testified as follows:

> Q Okay, but do you know for certain that you would have – that a prior follow-up would have saved any of the vision?
>
> A Yes.

Id.

After reviewing the entire record the court finds that Plaintiff has established by a preponderance of the evidence that Defendant's negligence was a proximate cause of Plaintiff's complete loss of vision in his right eye.[11]

### D. Contributory Negligence

Defendant argues that Plaintiff is barred from recovery based on his own contributory negligence. Specifically, Defendant contends that "Plaintiff's blindness occurred, in large part, due to his own failure to follow recommendations to take an active role in his own healthcare, his failure to report any concerns or problems regarding his eyes, and his failure to notify anyone of his need for a follow up appointment." Def. Mem. [DE-84], p. 19. In North Carolina where a plaintiff negligently contributes to his own injury the doctrine of contributory negligence acts as a complete bar to recovery. Sorrells v. M.Y.B. Hospitality Ventures of Asheville, 332 N.C. 645,

---

[11] Defendant argues that it is not the proximate cause of Plaintiff's injuries because "Plaintiff's loss of vision in his right eye was caused by the combination of several factors, including his poor eye and overall health to begin with, combined with the development of neovascular glaucoma." Def. Mem. [DE-77], p. 6. Thus, Defendant contends that "[t]he presence of silicone oil in the right eye was merely a contributing factor, and . . . [not] the sole proximate or actual cause of the loss of vision." Id. However, "[t]here may be more than one proximate cause of an injury." Hairston, 311 S.E.2d at 565. Regardless, the court credits Dr. Jindal's deposition testimony that the delay in treatment proximately caused the loss of Plaintiff's vision. Pl. Mem. [DE-85], pp. 5-6.

12

648 (1992). Contributory negligence is an affirmative defense and defendant bears the burden of proof. Warren v. Lewis, 273 N.C. 457, 460 (1968). To determine whether plaintiff was contributorily negligent, the court asks whether "a person using ordinary care for ... her own safety under similar circumstances" would avoided the hazards which caused her injuries. Norwood v. Sherwin-Williams Co., 303 N.C. 462, 468 (1981), *abrogated on other grounds by* Nelson v. Freeland, 349 N.C. 615 (1998); see also Parrish v. United States, No. 5:13-CV-794-FL, 2015 WL 4545969, at *9 (E.D.N.C. July 28, 2015). The record does not support Defendant's argument. As noted above, Dr. Jindal was aware of Plaintiff's relatively poorly controlled diabetes, and still, nonetheless, testified that Plaintiff's vision could have been saved with timely treatment. Pl. Mem. [DE-85], p. 6. To the extent Defendant contends Plaintiff should have complained to BOP personnel about his worsening vision, the record indicates that he did so. Tr. at pp. 52-55. After reviewing the entire record the undersigned finds that Defendant has not established by a preponderance of the evidence that Plaintiff's own negligence contributed to his injuries.

**E. Damages**

Damages[12] are a matter controlled by state law. Flannery for Flannery v. United States, 718 F.2d 108, 113 (4th Cir. 1983) ("In a personal injury action, such as this one, brought pursuant to the FTCA, damages are a matter controlled by state law."). The North Carolina Court of Appeals recently explained:

> [A] tortfeasor is responsible for all damages directly caused by his misconduct, and for all indirect or consequential damages which are the natural and probable

---

[12] Only compensatory damages are available in FTCA actions. Hidalgo v. Fed. Bureau of Prisons, No. 5:11-CV-00153, 2014 WL 37050, at *4 (S.D.W. Va. Jan. 6, 2014) (citation omitted).

13

> effect of the wrong, under the facts as they exist at the time the same is committed and which can be ascertained with a reasonable degree of certainty. However, [d]amages which are uncertain and speculative ... are too remote to be recoverable

Fields v. Fields, No. COA14-1204, 2015 WL 4620241, at *8 (N.C. Ct. App. Aug. 4, 2015) (quotation omitted).

Here, for the reasons stated above, Plaintiff has demonstrated by a preponderance of the evidence that he has suffered a non-speculative injury. While he was exhausting his administrative remedies in this matter, Plaintiff indicated that he sought $20,000,000.00 in damages. Pl. Ex. [DE-1-1]. Counsel for Plaintiff did not amend the amount requested in damages after he entered his notice of appearance.

Although Plaintiff has presented evidence sufficient to demonstrate that he sustained some amount of damages as required for a successful negligence claim, the evidence presented at trial does not support an award of $20,000,000.00 in damages. Additionally, Defendant correctly asserts that "[a]ny damages found in favor of Knowles are subject to an offset against the Forfeiture Order entered against Knowles in his federal criminal case." Proposed Pretrial Order [DE-62], p. 15. See 31 U.S.C. § 3278 ("[t]he Secretary of the Treasury shall withhold paying that part of a judgment against the United States Government presented to the Secretary that is equal to a debt the plaintiff owes the Government.").

For these reasons, Plaintiff shall supplement the record to specifically establish his damages in this matter no later than January 11, 2016. See, e.g., Zurba v. United States, 318 F.3d 736, 738 (7th Cir. 2003) (noting that the district court "bifurcated the liability and damages phases of the trial" and considered evidence at the damages phase relating to whether plaintiff could obtain damages in excess of her original tort claim); Reynolds v. United States, No. CIV

14

S-10-161 EFB, 2012 WL 947408, at *3 (E.D. Cal. Mar. 20, 2012) (unpublished). Defendant shall respond to Plaintiff's supplement no later than January 25, 2016. In its response, Defendant shall, *inter alia*, notify the court of the specific amount of damages that are subject to offset.

### F. Defendant's Motion for Judgment as a Matter of Law

At the close of Plaintiff's evidence, Defendant made an oral motion for judgment as a matter of law. Tr. at 62. Rule 50 of the Federal Rules of Civil Procedure indicates that such a motion is only applicable "[i]f a party has been fully heard on an issue during a *jury* trial." F. R. Civ. P. 50(a)(1) (emphasis added). Because this was a bench trial, not a jury trial, Defendant's motion should have been for involuntary dismissal under Rule 52(c) of the Federal Rules of Civil Procedure, not for judgment as a matter of law under Fed. R. Civ. P. 50(a). Rule 52(c) states that "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." F. R. Civ. P. 52(c). Regardless, based on the findings of fact and conclusions of law presented above, Defendant's motion is DENIED.

### CONCLUSION

Based on the foregoing Findings of Fact and Conclusions of Law, it hereby is ADJUDGED that Defendant's motion for judgment as a matter of law is DENIED, and that final judgment shall be entered in favor of Plaintiff. Plaintiff shall supplement the record to specifically establish his damages in this matter no later than January 11, 2016. Defendant shall respond to Plaintiff's supplement no later than January 25, 2016. In its response, Defendant shall, *inter alia*, notify the court of the specific amount of damages that are subject to offset.

SO ORDERED.

This the 14'th day of December, 2015.

                            *James C. Fox*
                            JAMES C. FOX
                            Senior United States District Judge